# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

\* \* \* \* \*

| | |
|---|---|
| JENNIFER DIPERNA, ) | |
| ) | |
| Plaintiff, ) | Case No.: |
| ) | |
| v. ) | |
| ) | |
| THE CHICAGO SCHOOL OF PROFESSIONAL ) | |
| PSYCHOLOGY; VIRGINIA QUINONEZ, an ) | |
| individual; LUKE MUDD, an individual; ) | |
| PATRICIA PEREZ, an individual; and ) | |
| DOES I-XX, inclusive, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, Jennifer DiPerna, by and through her attorney of record, JASON J. BACH of THE BACH LAW FIRM, LLC, and hereby complains and alleges against the above-named Defendants, and each of them, based upon knowledge, information and a reasonable belief derived therefrom, as follows:

### INTRODUCTION

This is a Complaint for Damages and injunctive relief brought by a student of The Chicago School of Professional Psychology (hereinafter referred to as the "Chicago School"). Plaintiff relies on the Academic Catalog and Student Handbook Student Rights and Responsibilities and the Institutional Policies regarding discrimination, harassment and retaliation set forth therein and alleges breach of contract claims and negligence claims for her unlawful suspension from the internship process, delay in her graduation, and failure to address her complaints of harassment and bullying.

### PARTIES & JURISDICTION

1. This Court has jurisdiction over the claims set forth in this action pursuant to 28 U.S.C. Section 1332 (diversity of citizenship) as each Defendant is a citizen of the State of Illinois and the Plaintiff is a citizen of the State of Ohio and the amount in controversy exceeds the sum or

value of $75,000.00.

2. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. 1391(b) in that the claims arose in this district, and Plaintiff and Defendants are located in this district.

3. Plaintiff, JENNIFER DIPERNA, at all relevant times was a citizen of the State of Ohio and was a student at The Chicago School of Professional Psychology in Chicago, Illinois.

4. Defendant, THE CHICAGO SCHOOL OF PROFESSIONAL PSYCHOLOGY is a not for profit corporation incorporated in Illinois that operates The Chicago School and whose principal place of business is Chicago, Illinois.

5. Defendant, VIRGINIA QUINONEZ, at all times relevant was the Department Chair at The Chicago School of Professional Psychology. She is believed to be a citizen of the State of Illinois.

6. Defendant, LUKE MUDD, at all times relevant was the Associate Department Chair at The Chicago School of Professional Psychology. He is believed to be a citizen of the State of Illinois.

7. Defendant, PATRICIA PEREZ, at all times relevant was an Associate Professor at The Chicago School of Professional Psychology. She is believed to be a citizen of the State of Illinois.

8. That the true names or capacities, whether individual, corporate, associate or otherwise, of Defendants DOES I through X are unknown to Plaintiff, who therefore, sues said Defendants by such fictitious names.

9. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as DOES are responsible in some manner for the events and happenings referred to in this action and proximately caused damages to Plaintiff as herein alleged, and that Plaintiff will ask leave of this Court to amend this Complaint, to insert the true names and capacities of said Defendants, and when the same have been ascertained to join such Defendants in this action.

10. At all times relevant hereto, and in all their actions described herein, Defendants' actions took place in the State of Illinois.

///

11. Defendants, and each of them, did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated well established and settled law.

## GENERAL FACTUAL ALLEGATIONS

12. Plaintiff, Jennifer DiPerna, is a student in the Chicago School of Professional Psychology (CSPP) in the Masters of Arts in Counseling program.

13. Plaintiff enrolled in CC546 in January 2013 with professor Patricia Perez. During the class on April 7, 2013, Plaintiff participated in an Immersion Project for Diversity with other classmates, including an African American student, Shakira.

14. During that project, Shakira and another African American student began harassing Plaintiff, a Caucasian female. While socializing with the assigned group for the project, Shakira's friend stated to Plaintiff, "I do not like white people." Plaintiff stated to the students in her group that she saw all races as equal and did not judge anybody based upon their race.

15. After this statement, Shakira became extremely agitated and falsely stated that Plaintiff was "racist," "color blind," and "we were not equal". Shakira and her friend then wrote an email to the professor Perez falsely accusing Plaintiff of being racist. Shakira and her friend, both African American students at CSPP, then began a campaign of bullying, harassment, slander, and defamation against Plaintiff, telling other students at the school and Professor Perez that she was a racist.

16. On April 15, 2013, Professor Perez called Plaintiff, Shakira, and another African American student in the diversity group into a meeting. Plaintiff informed Dr. Perez that she was uncomfortable and did not want to attend. However, Dr. Perez told Plaintiff she would be written up if she did not attend. During the meeting, Plaintiff was continually harassed and bullied by the other students and was again falsely called a racist. Dr. Perez did not take any corrective action and simply allowed the bullying and harassment to continue.

///

///


17. Plaintiff reported this incident to the Chicago School faculty member, Dr. Maria Yapondjian, on April 17, 2013. On April 18, 2013, Dr. Perez sent Plaintiff an email regarding the report to Dr. Yapondjian. Plaintiff again expressed the fact that she felt uncomfortable around Dr. Perez and the two classmates and wanted to change classes. Dr. Yapondjian and Dr. Perez completely dismissed Plaintiff's concerns, took no action regarding the bullying and harassment perpetrated against her by her classmates, and forced her to remain in the course.

18. On April 23, 2013, Plaintiff informed Dr. Perez that Shakira and other classmates were still harassing, bullying, and slandering her, including pointing at her and calling her a racist in the hallways of the school. Once again, Dr. Perez took no action. The bullying and slandering by Shakira continued and on April 30, 2013, Plaintiff again informed Dr. Perez of the conduct, as well as other professors and board members. No action was taken at that time to stop the harassment by anybody at CSPP.

19. On May 1, 2013, Dr. Perez told Plaintiff that she informed her supervisor of her concerns with Shakira. Nonetheless, the bullying, harassment, and slander continued and nobody at CSPP took any action.

20. On July 15, 2013, shortly after stories surfaced regarding celebrity chef, Paula Deen's, scandal involving racial discrimination, Plaintiff posted a picture of Paula Deen on her private Instagram account. The picture was clearly intended as an insult toward Paula Deen and her alleged intolerant beliefs toward African American people. At that time, postings of the same picture were widespread, via social media, due to the highly publicized allegations against Paula Deen.

21. Several of Plaintiff's African American friends commented on the Instagram picture stating they thought the picture was funny. But upon information and belief, Shakira, in her continuing efforts to bully and harass Plaintiff, reported the Instagram posting to CSPP officials likely claiming she was offended by it.

22. On July 29, 2013, Plaintiff received an email stating that an issue came to Associate Department Chair, Dr. Luke Mudd's, attention and required immediate attention. He advised

Plaintiff to contact him immediately to set up a meeting. However, she was not notified of what the meeting was regarding.

23. On August 1, 2013, Plaintiff met with Virginia Quinonez, Psyd, Department Chair and Dr. Mudd. At the meeting, they informed Plaintiff that the meeting was to discuss her posting of Paula Deen on Instagram and they believed that the posting was inappropriate and that it contained a derogatory racial slur. Plaintiff was not permitted or prepared to fully explain her intent behind the posting. Ms. DiPerna did state that the posting was a joke insulting Paula Deen and her beliefs, which had been made public shortly prior to the posting. Ms. DiPerna also said that she did not understand why she was in trouble for making fun of Paula Deen.

24. At the August 1, 2013 meeting, Plaintiff again reported the harassment and bullying she endured at the Chicago School, she also discussed the multiple prior reports she made and that the school did nothing about it. Again, Dr. Quinonez and Dr. Mudd ignored her complaints and said merely that it was in the past and to let it go.

25. Plaintiff also reported Shakira's and other student's offensive Instragram posts to Dr. Quinonez and Dr. Mudd to view the other classmates' social media sites, but they refused and ignored Plaintiff's complaint. One of the students involved in harassing and bullying Plaintiff for has over 10 pictures posted which contain the word "Nigga" on them. Yet, Dr. Quinonez responded that students could not report other students. This statement is completely absurd as another student reported Plaintiff's Instagram post to the school in the first place.

26. On August 2, 2013, Plaintiff was informed that as a result of the posting on Instagram, she would not be allowed to enter into her internship placement and she would be referred for a hearing with the Student Affairs Committee/Professional Comportment Subcommittee.

27. Plaintiff met with the Student Affairs Committee on September 17, 2013. Despite conducting this meeting, Plaintiff was not permitted to respond to the allegations against her or confront witnesses against her. She was not permitted to provide supporting evidence or documentation to refute the false allegations made against her.

///

28. Following the meeting, the Student Affairs Committee arbitrarily and capriciously placed her in an Academic Development Plan and suspended her engagement in the internship search process. This decision was baseless and not rationally related to any of the alleged conduct in which she engaged. Moreover, the decision did not take into consideration the fact that Plaintiff was harassed and bullied throughout the semester or the fact that The Chicago School ignored her complaints and refused to allow her to report other students who engaged in offensive conduct.

29. The decisions made by Defendants to remove Plaintiff from the Chicago School are arbitrary and capricious in nature, are in violation of the Chicago School's Academic Catalog and Student Handbook Student Rights and Responsibilities and the Institutional Policies.

30. As a result of Defendants' arbitrary, capricious, and unlawful actions, Plaintiff has been prevented from attending classes and completing her internship at the Chicago School, thus halting her ability to complete her program or to enter her chosen profession.

31. As a result of the above, Defendants, and each of them, have wrongly caused Plaintiff to be sanctioned and removed and for the above-noted sanctions to be wrongly placed on her record, all in violation of her contractual rights, depriving her of the opportunity to obtain an education and further her career, causing substantial damages.

**FIRST CAUSE OF ACTION**

*BREACH OF CONTRACT*

32. Paragraphs 1 through 31, inclusive are incorporated by reference.

33. Plaintiff, has an express and implied contract with Defendants in connection with rights explicitly guaranteed by the Academic Catalog and Student Handbook Student Rights and Responsibilities and the Institutional Policies regarding discrimination, harassment and retaliation.

34. Plaintiff was referred to the Student Affairs Committee and placed in an Academic Development Plan based upon wholly false allegations made by another student who bullied, harassed, and slandered Plaintiff throughout the semester which constitutes a violation of the Academic Catalog and Student Handbook sections on Disciplinary Review and Academic Development Plans.

35. Plaintiff was not permitted to respond to the allegations against her or confront witnesses against her. She was not permitted to provide supporting evidence or documentation to refute the false allegations made against her which constitutes a violation of the Academic Catalog and Student Handbook sections on Disciplinary Reviews, Committee Procedure.

36. Despite multiple reports to the Chicago School faculty, pursuant to the Institutional Policy, regarding the harassment and bullying which Plaintiff endured, Defendants failed to take any of the required action, including, but not limited to, conducting a thorough review of the facts and circumstances to determine the nature of the reported conduct. Thus, Defendants action constitutes a violation of the Institutional Policy.

37. As a result of the breaches of contract committed against the Plaintiff, she has been damaged, as described above in an amount in excess of seventy five thousand dollars ($75,000.00).

38. It has been necessary for the Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

## **SECOND CAUSE OF ACTION**

### *NEGLIGENCE*

39. Paragraphs 1 through 38, inclusive are incorporated by reference.

40. That Defendants owed Plaintiff a duty of care to act reasonably in responding to her complaints of harassment and bullying and to reasonably comply with its own policy surrounding said reports, yet Defendants chose to ignore Plaintiff's complaints.

41. This conduct constitutes of a breach of Defendants' duty of care it owed to Plaintiff.

42. As a direct and proximate result of Defendants' breach of their duty of care, Plaintiff has suffered monetary damages and requires medical and/or psychological care as result of the actions and inactions of Defendants. This has caused and/or will cause Plaintiff to incur expenses for medical care, treatment, and expenses incidental thereto. The total amount of Plaintiff's damages cannot yet be fully ascertained, and as such we respectfully ask leave of this Court to amend Plaintiff's Complaint to insert the full amount when such have been fully ascertained.

///

43. As a result of the mental distress described above, Plaintiff has suffered serious psychological injury, loss of community reputation, medical expenses, and to incur severe financial obligations in order to retain attorneys to seek redress against the unlawful conduct of the Defendants, as well as deprivation of liberty, invasion of privacy, and grievous mental suffering, causing damages.

44. It has been necessary for Plaintiff to obtain the services of an attorney to prosecute this action, and Plaintiff is entitled to an award of attorney's fees and costs of suit incurred herein.

***WHEREFORE,*** Plaintiff prays that this Honorable Court: Enter judgment in Plaintiff's favor, and against the Defendants, and each of them: (a) for compensatory damages in an amount to be determined at trial; (b) for injunctive and declaratory relief; and (c) together with the costs and disbursements of this action and such other attorney's fees and further relief as justice requires.

DATED this 3rd day of January, 2014.

THE BACH LAW FIRM, LLC

By: */s/ Jason J. Bach*
JASON J. BACH, ESQ.
6053 South Fort Apache Road, Suite 130
Las Vegas, NV 89148
*Attorney for Plaintiff*

KOREY COTTER HEATHER & RICHARDSON, LLC

By: */s/ Elliot Richardson*
Elliot Richardson
Two First National Plaza
20 S. Clark Street, Suite 500
Chicago, Illinois 60603
*Attorney for Plaintiff*