UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JENNIFER DIPERNA,               )
                                      )
       Plaintiff,           )
       v.                        )   Case No. 14-cv-57
                                        )
THE CHICAGO SCHOOL OF      )   Judge John W. Darrah
PROFESSIONAL PSYCHOLOGY,  )
                                      )
       Defendant.     )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jennifer DiPerna, filed an Amended Complaint against Defendant, the Chicago

School of Professional Psychology (the "Chicago School"), alleging breach of contract and

negligence. Chicago School filed a Motion to Dismiss [33] under Rule 12(b)(6) of the Federal

Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## BACKGROUND

The following is taken from the Amended Complaint, which is assumed to be true for the

purposes of a motion to dismiss. *Reger Dev., LLC v. Nat'l City Bank,* 592 F.3d 759, 763

(7th Cir. 2010). Jennifer DiPerna is a Caucasian, female student at the Chicago School in the

Masters of Arts Counseling program. (Am. Compl. at ¶¶ 7, 9.) During a class on April 7, 2013,

Plaintiff participated in a project with other classmates, including an African-American student

named Shakira. (*Id.* at ¶ 8.) During that project, Shakira and another African-American student

began harassing DiPerna. (*Id.* at ¶ 9.) The other African-American student told DiPerna that she

did not like white people. (*Id.*) DiPerna then stated that she did not judge anyone based on race

and saw all races as equal. (*Id.*) Shakira then accused DiPerna of being "racist" and "color

blind" and stated, "[W]e are not equal." (*Id.* at ¶ 10.) After this event, Shakira and her friend

wrote an e-mail to the professor of the class, Patricia Perez, falsely accusing DiPerna of being a racist. (*Id.* at ¶¶ 8, 10.) The two then began to bully, harass, slander, and defame DiPerna. (*Id.* at ¶ 10.)

On April 15, 2013, Perez called DiPerna, Shakira, and another African-American student into a meeting. (*Id.* at ¶ 11.) DiPerna told Perez that she was uncomfortable and did not want to attend, but Perez told DiPerna she would be written up if she did not attend. (*Id.*) During the meeting, DiPerna was harassed, bullied, and called a racist; but Perez did not intervene. (*Id.*) DiPerna reported this meeting to a faculty member, Maria Yapondjian, on April 17, 2013. (*Id.* at ¶ 12.) DiPerna expressed that she felt uncomfortable around Perez and the two classmates and wanted to change classes. (*Id.*) Yapondjian and Perez did not take any action regarding the bullying and harassment and forced DiPerna to remain in the course. (*Id.*)

DiPerna again informed Perez that she was being bullied and harassed on April 23, 2013. (*Id.* at ¶13.) On April 30, 2013, DiPerna told Perez, other professors, and board members that the bullying and harassment was occurring. (*Id.*) On May 1, 2013, Perez told DiPerna that she informed her supervisor about DiPerna's concerns with Shakira. (*Id.* at ¶ 14.) The bullying, harassment, and slander continued, without any action by the Chicago School. (*Id.*)

On July 15, 2013, DiPerna posted a picture of Paula Deen on her private Instagram account. (*Id.* at ¶ 15.) Shakira reported the Instagram posting to Chicago School officials. (*Id.* at ¶ 16.) DiPerna received an e-mail from Associate Department Chair Luke Mudd, stating that an issue had come to his attention and asking DiPerna to contact him immediately to set up a meeting. (*Id.* at ¶ 17.) On August 1, 2013, DiPerna met with Mudd and Department Chair

Virginia Quinonez.  (*Id.* at ¶ 18.)  Mudd and Quinonez informed DiPerna they believed the Paula

Deen posting was inappropriate and contained a derogatory racial slur.  (*Id.*)  DiPerna stated that

the posting was a joke meant to insult Paula Deen and her alleged beliefs.  (*Id.*)  At this meeting,

DiPerna again reported the harassment and bullying and discussed the prior reports.  (*Id.* at ¶ 19.)

Mudd and Quinonez ignored her complaints and told her to let it go.  (*Id.*)  DiPerna also reported

that Shakira and other students had similar offensive Instagram posts.  (*Id.* at ¶ 20.)  Quinonez

told DiPerna that students could not report other students.  (*Id.*)

The next day, DiPerna was informed she would not be allowed to enter into her

internship placement and would be referred to the Student Affairs Committee/Professional

Comportment Committee (the "Committee") due to her Instagram post.  (*Id.* at ¶ 21.)  DiPerna

met with the Committee on September 17, 2013, and was placed in an Academic Development

Plan and suspended from engaging in the internship search process.  (*Id.* at ¶ 22.)  DiPerna was

removed from the Chicago School and prevented from completing her internship, which

rendered her unable to complete her program for at least one year.  (*Id.* at ¶ 24.)

### LEGAL STANDARD

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a

claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A complaint must allege

enough facts to support a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 547 (2007).  Facial plausibility exists when the court can "draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S.

662, 678 (2009).  All well-pleaded allegations are presumed to be true, and all inferences are

read in the light most favorable to the plaintiff. *Lavalais v. Village of Melrose Park,* 734 F.3d

629, 632 (7th Cir. 2013). This presumption is not extended to 'legal conclusions, or threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements.' *Alam v.*

*Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013) (quoting *Brooks v. Ross,* 578 F.3d 574,

581 (7th Cir. 2009)). The complaint must provide a defendant "with 'fair notice' of the claim

and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting

Fed.R.Civ.P. 8(a)(2) and *Twombly*, 550 U.S. at 555).

## ANALYSIS

### *Count I - Breach of Contract*

In Count I, DiPerna alleges that Defendant arbitrarily and capriciously breached the

contract established by the Academic Catalogue and Student Handbook (the "Handbook"). The

Seventh Circuit has held that a student may have "an entitlement not to be suspended without

good cause" that is a reviewable matter of contract. *Williams v. Wendler*, 530 F.3d 584, 589 (7th

Cir. 2008). Courts can review whether school authorities acted arbitrarily or capriciously in their

treatment of a student. *Harris v. Adler Sch. of Prof'l Psychology*, 723 N.E.2d 717, 720 (Ill. App.

Ct. 1999). A court may not overrule the academic decision of a private school 'unless it is such a

substantial departure from accepted academic norms as to demonstrate that the person or

committee responsible did not actually exercise professional judgment.' *Raethz v. Aurora Univ.*,

805 N.E.2d 696, 699 (Ill. App. Ct. 2004) (quoting *Regents of the University of Michigan v.*

*Ewing*, 474 U.S. 214, 225 (1985)). Under Illinois law, a private university or college and its

students have a contractual relationship, and "the terms of their contract are generally set forth in

4

the [school's] catalogs and manuals." *Holert v. Univ. of Chicago*, 751 F. Supp. 1294, 1300

(N.D. Ill. 1990). A procedure that violates the Handbook is not *per se* arbitrary and capricious

conduct. *See Raethz*, 805 N.E.2d at 700.

DiPerna alleges that Defendant did not involve DiPerna, her advisor, and the Department

Chair/Lead Faculty or designee in developing her Academic Development Plan (the "Plan"), in

violation of the Handbook. DiPerna also alleges that Defendant failed to lay out various

requirements in her Academic Development Plan in violation of the Handbook ,which states:

> Academic Development Plans must clearly identify the concern(s) in question and
> the steps necessary to resolve them within a specified time frame. Additionally,
> the plan must identify who will oversee the plan and when and how feedback will
> be delivered to all parties involved. Finally, the plan must clarify the
> consequences if the terms of the Academic Development Plan are not fulfilled.

(Am. Compl at ¶ 31.) DiPerna also alleges that she was subject to a Disciplinary Review for her

actions, while Shakira and other students were not. The Handbook provides: "In instances where

a student is alleged to have engaged in behaviors inconsistent with academic integrity and

professional comportment that may warrant disciplinary action, the student will be referred to the

Student Affairs Committee (SAC)." (*Id.* at ¶ 33.) Last, DiPerna alleges that Defendant breached

the contract when it failed to take any action when she reported harassment and bullying. The

Handbook provides:

> Anyone who feels that s/he has been subject to unlawful discrimination,
> harassment or retaliation (whether by faculty members, employees, site
> supervisors, visitors, or other students) should bring the issue to the immediate
> attention of his/her program chair or academic head of the program, campus dean
> of academic affairs and/or campus student affairs officer . . . A thorough review
> of the facts and circumstances of each situation will be undertaken to determine
> whether particular conduct constitutes harassment under this policy. Complaints
> will be kept confidential to the extent possible. Individuals who violate this policy

will be subject to disciplinary action, up to and including removal from the institution.

(*Id.* at ¶ 35.) Defendant argues DiPerna has not sufficiently alleged that any procedural breaches were arbitrary, capricious, and made in bad faith.

DiPerna's claims under Count I sufficiently allege that the Defendant's actions were arbitrary and capricious. DiPerna alleges Defendant violated the Handbook by subjecting her to a Disciplinary Review for her actions, while Shakira, and other students who engaged in similar conduct, was not. This allegation is sufficient to survive at the motion to dismiss stage. DiPerna's claim that she was arbitrarily and capriciously singled out for discipline, while others engaged in similar conduct were not, goes beyond merely violating the Handbook's procedures. Similarly, DiPerna sufficiently alleges that she was arbitrarily and capriciously investigated and punished for her Instagram post. DiPerna alleges that while she was investigated for "unlawful discrimination, harassment or retaliation" by Mudd and Quinonez due to her Instagram post, others who posted the same or similar content were not. DiPerna also alleges that Defendant breached the contract when it failed to take any action when she reported harassment and bullying.

The alleged conduct goes beyond merely violating the Handbook procedure. Defendant' Motion to Dismiss Count I is denied.

### *Count II - Negligence*

In Count II, DiPerna alleges Defendant owed her a duty of care to act reasonably in responding to her complaints of harassment and bullying and a duty to reasonably comply with the Chicago School's policy surrounding her reports. Defendant responds that this claim is pre-

empted by the Illinois Human Rights Act ("IHRA") and that DiPerna fails to allege an independent legal duty outside of the Handbook.

The IHRA provides that "no court of [Illinois] shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 Ill. Comp. Stat. 5/8-111 (D). Contract and tort claims are preempted by the IHRA when the claims are "inextricably linked" to a civil rights violation. *Geise v. Phoenix Co. of Chi., Inc.*, 639 N.E.2d 1273, 1277 (Ill. 1994). As previously stated, when a civil rights "aspect of [a] case is 'merely incidental to what are otherwise ordinary common law tort [or contract] claims' . . . the claim is not preempted." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 603 (7th Cir. 2006) (quoting *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997)). The civil rights aspect to this case is merely incidental to the ordinary tort and contract claims; therefore, the claims are not preempted. The color of the Plaintiff and her alleged harassers does not bear on the substance of the claims.

Defendant is correct that the duty to reasonably comply with its own policy regarding DiPerna's reports is simply a breach of contract claim dressed as a tort. "Illinois law does not permit a suit for breach of contract to be recast as a tort suit." *Normand v. Orkin Exterminating Co.*, 193 F.3d 908, 912 (7th Cir. 1999). Therefore, DiPerna must allege a legal duty that is independent of the Handbook.

DiPerna has alleged an independent duty of care to act reasonably in responding to her complaints about harassment and bullying. In Illinois, "[w]hether a duty of care exists is a question of law to be determined by the court." *Bajwa v. Metropolitan Life Insurance Co.*, 804 N.E.2d 519, 526 (Ill. 2004). The existence of a duty depends on a relationship such that the law

gives the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Id.* (citing

*Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118 (Ill. 2002)).  Whether such a duty of care

actually exists is a question more properly addressed at the summary judgment stage.  For now, it

is sufficient that DiPerna has alleged that an independent duty of care exists.  Defendant's

Motion to Dismiss Count II is denied.

## CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss [33] is denied.


Date:          January 27, 2015          /s/ _____
                                            JOHN W. DARRAH
                                            United States District Court Judge

8