UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER DIPERNA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 14-cv-57 |
| v. | ) |
| | ) Judge John W. Darrah |
| THE CHICAGO SCHOOL OF | ) |
| PROFESSIONAL PSYCHOLOGY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Jennifer DiPerna, filed a Second Amended Complaint against Defendant, the Chicago School of Professional Psychology, alleging breach of contract and negligence. Defendant filed a Motion for Summary Judgment [93] on all counts. For the reasons set forth more fully below, Defendant's Motion for Summary Judgment [93] is granted in part and denied in part.

**LOCAL RULE 56.1**

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A nonmovant's "mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). In the case of any disagreement, the nonmoving party must reference affidavits, parts of the record, and other

materials that support his stance. Local Rule 56.1(b)(3)(B). To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment."

A district court is entitled to expect strict compliance with Rule 56.1; substantial compliance is not enough. *Ammons*, 368 F.3d at 817. "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) (quoting *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009)).

## BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.

Plaintiff is currently a resident of Ohio and is a former student of Defendant. (DSOF ¶¶ 1, 3.) Defendant is a nonprofit private institution that operated under the policies, procedures, rules, and regulations set out in the Academic Catalogue and Student Handbook (the "Handbook") during the years 2012-13, 2013-14, and 2014-15. (*Id.* ¶ 4.) Plaintiff was seeking a Master of Arts in Counseling Psychology from Defendant. (*Id.* ¶ 21.)

In January 2013, Plaintiff took "Diversity in Clinical Practice" with Dr. Patricia Perez, an adjunct faculty member. (*Id.*) As part of the class, student groups, selected by Dr. Perez, participated in an "Immersion Project" where those groups examined a race, ethnicity, or other characteristic different than those of the group member. (*Id.* ¶ 25.) Plaintiff, who is white, was put into a group with two African-American women, Shakira and Catherine. (*Id.* ¶ 26.) As part of the project, the group examined the LGBT community and went to see a drag show on April 7, 2013. (*Id.* ¶ 27.) After that outing, Shakira e-mailed Dr. Perez and expressed concerns about Plaintiff's ability to work with clients of a diverse background based on a discussion the group had about privileged status, based on race, during the outing. (*Id.* ¶ 29.) Sometime between April 7 and April 15, 2013, Plaintiff met with Dr. Perez privately about what had happened at the outing. (*Id.* ¶ 30.)

On April 16, 2013, Dr. Perez had meetings with each Immersion Project group. (*Id.* ¶ 32.) During that meeting, the issue of privilege was raised; and Plaintiff and Catherine had a disagreement. (*Id.* ¶¶ 33-34.) Dr. Perez encouraged the students to speak to each other so they could work out differences within the group. (*Id.* ¶ 35.) Plainitff went to see the Associate Department Chair, Dr. Maureen Keeshin, to express her concerns because her advisor was out of town. (*Id.* ¶ 36.) Dr. Keeshin told Plaintiff to speak to her advisor when she returned but said that Plaintiff should see Dr. Maria Yapondjian, who oversaw adjunct faculty, in the meantime. (*Id.* ¶ 37.) Plaintiff met with Dr. Yapondjian on April 17, 2013, and said that she did not want to be in the class anymore because she was not comfortable with Dr. Perez or Shakira. (*Id.* ¶ 38.) Dr. Yapondjian told Plaintiff that she would have to remain in the class because there were only two class sessions left. (*Id.* ¶ 39.) On April 18, 2013, after hearing from Dr. Yapondjian, Dr. Perez told Plaintiff that she could present her Immersion Project Findings individually. (*Id.*

3

¶ 40.) On April 23, 2013, Plaintiff met with Dr. Perez and told her that people were calling her color blind, making comments, and pointing at her when those people were with Shakira. (*Id.* ¶ 41.)

On July 15, 2013, two African-American students who were not involved in the Immersion Project reported to an adjunct professor that Plaintiff had posted a photograph with Paula Deen using a racial slur on Plaintiff's Instagram account and asked the adjunct professor to forward their concerns to Defendant's administration. (*Id.* ¶¶ 47, 48.) Towards the end of that summer, those two students reiterated their concerns about the posting with Dr. Keeshin, who was then Plaintiff's advisor and Associate Department Chair, and Dr. Virginia Quiňonez, then-Department Chair. (*Id.* ¶¶ 43, 47.)

On August 1, 2013, Dr. Quiňonez and Dr. Luke Mudd, Associate Department Chair, met with Plaintiff for a counseling session regarding the Instagram post. (*Id.* ¶ 48.) Plaintiff admitted posting the picture and stated that she saw nothing wrong with it, as it was posted on her private Instagram account and was meant to be humorous. (*Id.*) Dr. Quiňonez and Dr. Mudd did not tell Plaintiff who the reporting students were. (*Id.* ¶ 50.) Plaintiff reiterated her prior issues with Shakira to Dr. Quiňonez and Dr. Mudd and contended that Shakira's Instagram posts, which used similar racial slurs, should be treated in the same manner. (*Id.* ¶ 49.) In early August 2013, shortly after their meeting, Dr. Quiňonez provided Plaintiff with a link to a complaint procedure to look at with respect to her bullying complaints. (*Id.* ¶ 53.) Dr. Quiňonez also told Plaintiff to follow up with her advisor about any other concerns. (*Id.* ¶ 54.)

Dr. Quiňonez and Dr. Mudd, in consultation with Dr. Keeshin, referred Plaintiff to the Student Affairs Committee ("SAC"). (*Id.* ¶¶ 13, 55.) A student may be referred to the SAC for issues relating to academic integrity and comportment, where "'[p]ossible interventions and

sanction[s] may include, but are not limited to, implementing an Academic Development Plan ["ADP"], placing a student on academic warning/probation or dismissing a student' with respect to academic integrity matters such as plagiarism." (*Id.* ¶ 13.) After SAC hearings, the SAC delayed her required program internship and gave her an ADP, which she successfully completed. (*Id.* ¶ 56.) Plaintiff did not appeal the ADP or the delay in her internship. (*Id.* ¶ 59.)

In September 2013, Plaintiff spoke with Dr. Keeshin and told Dr. Keeshin that she was being bullied. (*Id.* ¶ 43.) Dr. Keeshin told Plaintiff that she could file a grievance. (*Id.* ¶ 44.)

In January 2015, Plaintiff took a required Seminar course with Dr. Kristin Davisson, an adjunct professor. (*Id.* ¶ 61.) A main part of the course is the Clinical Competency Examination ("CCE"). (*Id.* ¶ 62.) Successfully completing the CCE establishes that a student has met the program's requirements to graduate. (*Id.* ¶ 63.) A student drafts the CCE based on their concurrent clinical internship experience. (*Id.* ¶ 64.) The CCE must be drafted in compliance with Defendant's plagiarism policy. (*Id.* ¶ 65.) One part of the CCE is the conceptualization, or case formulation, section, which requires a student to use a specific theory they have learned and apply it to their client and that client's symptoms. (*Id.* ¶ 66.) Dr. Davisson believed that the conceptualization portion of Plaintiff's paper was plagiarized and ran Plaintiff's paper through a web-based program designed to detect plagiarism, turnitin.com. (*Id.* ¶¶ 71, 72.) The conceptualization portion was marked by turnitin.com as 92% plagiarized from other sources without proper attribution, and the entire CCE was marked as 10% plagiarized from other sources without proper attribution. (*Id.*) Dr. Davisson reported the plagiarism to Dr. Mudd, who then mandated referral to the SAC. (*Id.* ¶ 74.) On March 25, 2015, Plaintiff met with Dr. Davisson and Dr. Mudd to discuss the plagiarism accusations. (PSOF, ¶ 22.)

On May 12, 2015, Plaintiff had her SAC hearing in regards to the plagiarism charges. (*Id.* ¶ 23.) At the hearing, Plaintiff complained about Dr. Davisson's unprofessional breach of protocol, unfair selective treatment, and retaliation from this litigation. (*Id.* ¶ 24.) On May 13, 2015, Plaintiff was notified of the SAC's decision to dismiss her from the program. (*Id.* ¶ 25.) The referral to the SAC resulted in Plaintiff's dismissal from Defendant. (DSOF ¶ 74.)

Plaintiff testified that, on May 23, 2015, she submitted an appeal of the SAC's decision to Dr. Azara Santiago-Rivera, then Defendant's Dean of Academic Affairs.[1] (*Id.* ¶ 76.) This appeal alleged improper procedure through Dr. Davisson's breach of protocol, unfair selective treatment from Dr. Davisson and the SAC, and retaliation from this lawsuit from Dr. Davisson and the SAC. (PSOF, ¶28.)

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Courts deciding summary judgment motions must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). Factual disputes do "not preclude summary

---

[1] Whether or not the submission to Dr. Santiago-Rivera met the requisite factors for appeal consideration is disputed.

6

judgment when the dispute does not involve a material fact." *Burton v. Downey*, 805 F.3d 776, 783 (7th Cir. 2015). The evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**ANALYSIS**

*Breach of Contract*

In Count I, Plaintiff alleges that Defendant failed to follow the 2013-2014 Handbook through several actions: (1) failing to involve Plaintiff, her advisor, and the Department Chair/Lead Faculty or designee in developing her ADP; (2) failing to include several requirements in the ADP; (3) failing to refer Shakira or any other student to the SAC for bullying and harassment; and (4) by finding Plaintiff guilty of academic dishonesty, despite evidence that she committed no amount of unacceptable plagiarism and despite the fact that she was never given an opportunity to correct any perceived plagiarism.[2]

A college and its students have a contractual relationship, and the terms of that relationship are generally set forth in the school's catalogues and bulletins. *Raethz v. Aurora Univ.*, 805 N.E.2d 696, 699 (Ill. App. Ct. 2004). A student has a remedy for breach of contract when there has been an adverse academic decision only where that decision was made arbitrarily, capriciously, or in bad faith. *Id.* (citing *Frederick v. Northwestern University Dental School*, 617 N.E.2d 382, 387 (Ill. App. Ct. 1993)). A college or university is not liable for exercising "its academic judgment unwisely." *Id*. at 700. To constitute a breach of contract, a dismissal must be made without any rational basis. *Frederick*, 617 N.E.2d at 387. The burden

---

[2] Plaintiff concedes that her allegations of arbitrary and capricious conduct in regards to her complaints relating to Dr. Perez, her ADP, and the delay of her internship are barred due to her not filing a timely grievance.

on a plaintiff is high, as a court may not override the academic decision of a university "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 225 (1985).

<u>Bullying/Harassment</u>

Defendant's procedure for addressing complaints of harassment and bullying is laid out in its academic catalogues. The first reporting procedure is as follows:

> Anyone who feels that s/he has been subject to unlawful discrimination, harassment or retaliation (whether by faculty members . . . or other students) should bring the issue to the immediate attention of his/her academic program chair or academic head of the program, campus dean of academic affairs and/or campus student affairs officer. A student who feels that s/he has been subject to sexual harassment or sexual violence should bring the issue to the immediate attention of the campus student affairs officer. The campus student affairs officer will report such incidents immediately to the Vice President of Student Affairs who serves [as Defendant's] Title IX Coordinator. A thorough review of the facts and circumstances of each situation will be undertaken to determine whether particular conduct constitutes harassment under this policy. Complaints will be kept confidential to the extent possible. Individuals who violate this policy will be subject to disciplinary action, up to and including removal from the institution.

(DSOF ¶ 8.) A second reporting procedure may be used if a student believes their rights have been violated, including illegal discrimination. (*Id*. ¶ 9.) The second procedure has an informal process and a formal process, each with time limits for initiating a grievance. (*Id*.) In the informal process, a student is encouraged to resolve the issue with the person involved and may seek assistance from an advisor, Department Chair/Lead Faculty or designee, Dean of Academic Affairs, or campus student affairs. (*Id*. ¶ 10.) The informal procedure may be terminated at any time, and the student can move to the formal process. (*Id*. ¶ 11.) A grievance intake form must be submitted to the Campus President for the formal process. (*Id.* ¶ 12.)

Plaintiff spoke to three people about being bullied and/or harassed: Dr. Perez, an adjunct faculty member; Dr. Quiňonez, then-Department Chair; and Dr. Mudd, Associate Department Chair. Defendant asserts that the conduct Plaintiff complained of is harassment under the "Prohibition of Discrimination, Harassment and Retaliation" Policy found in the 2012-2013 Handbook. But no action was taken, even though the Handbook states: "Individuals who violate this policy *will be subject to disciplinary action*, up to and including removal from the institution." (DSOF, ¶ 8.) There is no evidence that any review of the facts and circumstances occurred or that any disciplinary action was taken against any of the individuals that Plaintiff alleged harassed her, even though Defendant admits that the conduct was harassment.[3] Defendant briefly states that Plaintiff's reporting of this conduct to Dr. Quiňonez was not "immediate", but Plaintiff stated that Shakira's harassment was continuous. (Dkt. 100-1, p. 103:10-20.)

Defendant argues that Plaintiff never made a formal complaint, though Dr. Quiňonez gave Plaintiff a link to the formal grievance process. However, Defendant failed to comply with the provisions of the first reporting procedure; and there is no requirement that a student use the second reporting procedure.[4] Defendant also argues that there is no continuum between Plaintiff's complaints to Dr. Perez and Plaintiff's complaints to Dr. Quiňonez, because there is

---

[3] "45. Plaintiff admits that the student conduct of which she complains in paragraphs 10-16 of the Second Amended Complaint is conduct which is prohibited by the "Prohibition of Discrimination, Harassment and Retaliation" Policy found in the 2012-2013 Academic Catalogue and Student Handbook. Second Amended Complaint, ¶¶ 10-16; TCSPP's First Set of Requests for Admission, No. 2; Plaintiff's Second Amended Response to TCSPP's First Set of Requests for Admission, Resp. No. 2.
Response: Jennifer DiPerna admits Defendant's Statement 45."
(DSOF ¶ 45.)

[4] The Handbook states that the student grievance procedure "*may be used* whenever a student believes that his/her rights have been violated by a member of the school community." (Dkt. 96-1, p. 25) (emphasis added).

no evidence that Shakira reported Plaintiff's Instagram post. Even if Shakira did not report Plaintiff's Instagram post or did not make offensive Instagram posts, the bullying activity was communicated to Dr. Quiñonez and Dr. Mudd; and, as asserted by Defendant, that activity alone constitutes harassment under the Handbook. There is a genuine issue of material fact as to whether Defendant acted in an arbitrary and capricious manner when not responding to Plaintiff's bullying and harassment complaints.

<u>Instagram</u>

Plaintiff also alleges that Defendant's actions were arbitrary and capricious when Defendant disciplined her for an Instagram posting containing a slur but did not discipline other students for similar postings. Defendant's policies prohibit social media that is disparaging or injurious to students, uses ethnic slurs, or is otherwise inappropriate towards other students. (DSOF ¶ 5.) Plaintiff asserts that another student made several Instagram posts that contained the same offensive language that Plaintiff posted and has submitted examples of those posts.

Defendant objects that social media posts are difficult to authenticate. To authenticate evidence under Federal Rule of Evidence 901, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(1). Evidence may be authenticated by distinctive characteristics, such as: "The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). The account has a picture of the individual allegedly making the Instagram posts and has the same name as the individual allegedly making the Instagram posts. In one of those posts, the individual is wearing a shirt that says "The Chicago School of Professional Psychology." Plaintiff went to school with Shakira

and could offer testimony as to whether the person pictured is Shakira and whether the name associated with the account is Shakira's full name.

Defendant argues that Plaintiff did not state that she personally found Shakira's Instagram posts to be offensive. However, she did state in her deposition that she attempted to show Dr. Quiñonez and Dr. Mudd the Instagram photos because they contained the same ethnic slur. (DSOF ¶ 50.) Defendant argues that Plaintiff's cited material does not support Plaintiff's denial of Defendant's statement of fact. Dr. Mudd stated in his deposition that he did not recall Plaintiff's telling him and Dr. Quiñonez that she found Shakira's posts offensive. (Dkt. 96-10, p. 53: 9-11.) However, when determining if there is a genuine issue of material fact, a court must construe all facts and make reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014). There is a genuine issue of material fact as to whether Plaintiff reported Shakira's posts and, therefore, whether the Defendant acted in an arbitrary and capricious manner when punishing Plaintiff and not others.

<u>Plagiarism</u>

Plaintiff also alleges that the decision to dismiss her for plagiarism in her CCE was arbitrary and capricious. Plagiarism is defined by the Handbook as:

> Plagiarism is intentionally or unintentionally representing words, ideas, or data from any source as one's own original work. The use or reproduction of another's work without appropriate attribution in the form of complete, accurate, and properly formatted citations constitutes plagiarism. Examples of plagiarism, (*sic*) include but are not limited to, copying the work of another verbatim without using quotation marks, revising the work of another by making only minor word changes without explanation, attribution, and citation, paraphrasing the work of another without the appropriate citation. Students are expected to produce original work in all papers, coursework, dissertation, and other academic projects (including case studies from internship or practicum sites) and to follow appropriate rules governing attribution that apply to the work product.

> Carelessness, or failure to properly follow appropriate rules governing source attribution (for example, those contained in the Publication Manual of the American Psychological Association), can be construed to be plagiarism when multiple mistakes in formatting citations are made in the same paper. Further, a single example of failing to use quotation marks appropriately may be considered plagiarism.

(DSOF ¶ 17.) All suspected plagiarism must be immediately referred to the Department Chair/Lead Faculty or designee, who then refers it to the SAC. (*Id.* ¶ 18.)

Plaintiff argues that there is an unofficial policy of an acceptable level of plagiarism at both the school and in the class specifically. However, there is no admissible evidence that any amount of plagiarism is acceptable or that there is an unofficial policy of allowing a certain amount of plagiarism. Plaintiff stated in her deposition that individuals told Plaintiff that there is an acceptable amount of plagiarism. However, Plaintiff has not produced evidence that this is the case; and Plaintiff's deposition testimony on this subject is inadmissible hearsay. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment.").

Plaintiff's other arguments regarding plagiarism also fail to raise an issue of material fact. Plaintiff argues that the use of turnitin.com was not permissible, but her mere assertion that turnitin.com is inappropriate in determining plagiarism does not create an issue of fact. Plaintiff's expert indicated a score of 3% plagiarism for the CCE. (PSOF ¶¶ 20-21.) However, as stated above, Plaintiff has presented no evidence that any level of plagiarism is acceptable at the school. Plaintiff further argues that Dr. Davisson impermissibly hand-typed Plaintiff's paper into turnitin.com, which was unprofessional and unethical conduct. Even if that were so, the paper was later put through the plagiarism website in its entirety; and the section that Dr. Davisson hand-typed was still found to be plagiarized in large part. (*Id.*, ¶¶ 17-19.)

Plaintiff further argues that the SAC did not consider her complaints of unprofessional protocol, unfair selective treatment, and retaliation. Plaintiff has presented no evidence that she was singled out or targeted in response to this lawsuit and has presented no evidence that her arguments to the SAC were ignored. Finally, Plaintiff argues that her timely and proper appeal was ignored. Under the Handbook, an appeal may be made to the Dean of Academic Affairs under three circumstances: new evidence, evidence of improper procedure, or new arguments that could not have been raised at the time of the hearing. (DSOF ¶ 20.) Plaintiff argues that, in the appeal, she alleged improper procedure through Dr. Davisson's hand-typing, unfair and selective treatment, and retaliation from the current litigation. (*Id*. ¶ 77.) However, these are the same arguments that she made in front of the SAC. (PSOF ¶¶ 23, 24) ("At [the SAC] hearing, Plaintiff complained of Davisson's unprofessional breach of protocol, unfair selective treatment, and retaliation from instant (*sic*) from (*sic*) litigation.") Plaintiff made the same arguments in her appeal as she did in front of the SAC, which means that they are not new evidence, evidence of improper procedure, or arguments that could not have been raised before.[5] Plaintiff's appeal was not a proper appeal under the Handbook.

In order to avoid summary judgment, Plaintiff must show some evidence that her dismissal was made without any rational basis. Plaintiff has failed to present evidence establishing a genuine dispute for trial on the issue of plagiarism. Defendant's Motion for

---

[5] Defendant states that Plaintiff, in her appeal, improperly objected to the number of members sitting on the SAC at the time of her hearing. Plaintiff does not raise this argument in her response; and, as Defendant points out, there is no evidence that nine members are required. To the extent that Plaintiff is speculating the result may have been different, speculation is not a basis for the denial of summary judgment. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) ("[i]t is well-settled that speculation may not be used to manufacture a genuine issue of fact.").

Summary Judgment is granted as to Plaintiff's plagiarism claim in Count I but denied as to her bullying/harassment claim and Instagram claim in Count I.

*Negligence*

In Count II, Plaintiff alleges that Defendant was negligent in not responding to her complaints of harassment and bullying and not complying with its own policy in regards to her complaints. However, Plaintiff acknowledges that her negligence claim is barred, as she cannot seek purely economic loss under a negligence theory. *Werblood v. Columbia Coll. of Chicago*, 536 N.E.2d 750, 751 (Ill. App. Ct. 1989) ("negligent administration of College by-laws was properly found to be precluded by the economic loss doctrine"). Defendant's Motion for Summary Judgment is granted as to Count II.

*Damages*

Defendant also asks for summary judgment on Plaintiff's ability to recover tuition and living expenses. Plaintiff's expert report on damages assumes an injury date of January 15, 2013; but it is not clear to what that date refers. Plaintiff started her Immersion Project in January 2013, but the first alleged injury came in April 2013. However, Plaintiff has explicitly conceded her claims as to the ADP and delayed internship are barred due to her not filing a timely grievance. The ADP and delayed internship are the cause of the extra tuition. Further, the "Agreement to Repay Expenses" is specifically tied to Plaintiff's expulsion from the program, which was a result of plagiarism and, as discussed above, was not arbitrary or capricious. (PSOF, Exh. 5, Exh. A.)[6] Defendant's Motion for Summary Judgment is granted as to Plaintiff's alleged damages for tuition and living expenses.

---

[6] The "Agreement to Repay Expenses" states: "That, as a result of [Plaintiff's] expulsion from The University of Chicago (*sic*) counseling program, [Plaintiff] has incurred, and continues to incur, damages comprised of various expenses."

14

## CONCLUSION

Defendant's Motion for Summary Judgment [93] is granted in part and denied in part. The Motion is granted as to Plaintiff's plagiarism claim in Count I but denied as to her bullying/harassment claim and Instagram claim in Count I. The Motion is granted as to Count II and as to Plaintiff's alleged damages for tuition and living expenses.

Date: November 28, 2016

/s/ JOHN W. DARRAH
United States District Court Judge