UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JENNIFER DIPERNA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-cv-57 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| THE CHICAGO SCHOOL OF | ) | |
| PROFESSIONAL PSYCHOLOGY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jennifer DiPerna, filed a Second Amended Complaint against Defendant, the

Chicago School of Professional Psychology, alleging breach of contract and negligence.

Defendant filed a Motion for Summary Judgment, which was granted in part and denied in part.

Plaintiff filed a partial Motion to Reconsider [108], asking to reconsider the ruling on the claim

related to plagiarism. Plaintiff's Motion to Reconsider [108] is denied.

## BACKGROUND

Plaintiff is currently a resident of Ohio and is a former student of Defendant.

Defendant is a nonprofit private institution that operated under the policies, procedures, rules,

and regulations set out in the Academic Catalogue and Student Handbook (the "Handbook")

during the years 2012-13, 2013-14, and 2014-15. Plaintiff was seeking a Master of Arts in

Counseling Psychology from Defendant.

In January 2015, Plaintiff attended a required Seminar course with Dr. Kristin Davisson,

an adjunct professor. A main part of the course is the Clinical Competency Examination

("CCE"), which must be drafted in compliance with Defendant's plagiarism policy. Davisson

believed one portion of Plaintiff's CCE was plagiarized and ran it through a web-based program

designed to detect plagiarism, turnitin.com.  The conceptualization portion was marked by turnitin.com as 92 percent plagiarized from other sources without proper attribution, and the entire CCE was marked as 10 percent plagiarized from other sources without proper attribution. Davisson reported the plagiarism to Dr. Luke Mudd, Associate Department Chair, who then mandated referral to the Student Affairs Committee ("SAC").  On March 25, 2015, Plaintiff met with Davisson and Mudd to discuss the plagiarism accusations.

On May 12, 2015, Plaintiff had an SAC hearing in regards to the plagiarism charges.  At the hearing, Plaintiff complained about Davisson's unprofessional breach of protocol, unfair selective treatment, and retaliation from this litigation.  On May 13, 2015, Plaintiff was notified of the SAC's decision to dismiss her from the program.  The referral to the SAC resulted in Plaintiff's dismissal from Defendant.

## LEGAL STANDARD

"Motions for reconsideration serve a limited function:  to correct manifest errors of law or fact or to present newly discovered evidence."  *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996).  A manifest error "is not demonstrated by the disappointment of the losing party"; it is the "wholesale disregard, misapplication, or failure to recognize controlling precedent."  *Oto v. Metropolitan Life Ins.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotation marks omitted).

## ANALYSIS

A college and its students have a contractual relationship, and the terms of that relationship are generally set forth in the school's catalogues and bulletins.  *Raethz v.*

*Aurora Univ.*, 805 N.E.2d 696, 699 (Ill. App. Ct. 2004).  A student has a remedy for breach of contract when there has been an adverse academic decision only where that decision was made arbitrarily, capriciously, or in bad faith.  *Id.* (citing *Frederick v. Northwestern University Dental School*, 617 N.E.2d 382, 387 (Ill. App. Ct. 1993)).  A college or university is not liable for exercising "its academic judgment unwisely."  *Id.* at 700.  To constitute a breach of contract, a dismissal must be made without any rational basis.  *Frederick*, 617 N.E.2d at 387.  A court may not override the academic decision of a university "unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."  *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 225 (1985).

Plaintiff alleged that the decision to dismiss her for plagiarism in her CCE was arbitrary and capricious.  Plagiarism is defined by the Handbook as:

> Plagiarism is intentionally or unintentionally representing words, ideas, or data from any source as one's own original work. The use or reproduction of another's work without appropriate attribution in the form of complete, accurate, and properly formatted citations constitutes plagiarism. Examples of plagiarism, (*sic*) include but are not limited to, copying the work of another verbatim without using quotation marks, revising the work of another by making only minor word changes without explanation, attribution, and citation, paraphrasing the work of another without the appropriate citation.  Students are expected to produce original work in all papers, coursework, dissertation, and other academic projects (including case studies from internship or practicum sites) and to follow appropriate rules governing attribution that apply to the work product.

> Carelessness, or failure to properly follow appropriate rules governing source attribution (for example, those contained in the Publication Manual of the American Psychological Association), can be construed to be plagiarism when multiple mistakes in formatting citations are made in the same paper. Further, a single example of failing to use quotation marks appropriately may be considered plagiarism.

(DSOF ¶ 17.)  All suspected plagiarism must be immediately referred to the Department Chair/Lead Faculty or designee, who then refers it to the SAC.  (*Id.* ¶ 18.)

Plaintiff "deduces from the Court's opinion that it used the 10% rating on the similarity index as conclusive evidence that the CCE was, as a matter of law, plagiarized." (Dkt. 108, p. 2.)  This Court did not assert that "turnitin.com was the ultimate authority on determining whether plagiarism occurred." (Dkt. 124, p. 3.)  Plaintiff states that her expert report was the only evidence as to whether or not plagiarism occurred.  However, in response to Defendant's Statement of Facts, Plaintiff stated:  "Turnitin.com reported a *plagiarism rating of 10%.* Plaintiff's expert opines that the paper had a *3% plagiarism rating*." (DSOF, ¶ 72) (emphasis added).  In Plaintiff's own statement of facts, she stated:  "That the *plagiarism score* for the entire paper was 10% on turnitin.com." (PSOF, ¶ 9) (emphasis added).  Plaintiff admitted in her responses that these percentages were plagiarism ratings.

Plaintiff argues that a statement regarding plagiarism in a different class could lead a reasonable jury to conclude that this 20 percent threshold was a university-wide policy.  The syllabus for the Diversity class states:  "Papers that have a similarity index of 20% or higher will automatically be referred to the Department Chair and possib[ly] to the Student Affairs Academic Integrity Committee." (Dkt. 96-5, p. 89.)   However, the Seminar syllabus states: "*All incidents of academic dishonesty must be immediately referred to the Department Chair* or Associate Department Chair for investigation and intervention.  The Student Affairs Committee may be convened to review the student's situation." (Dkt. 96-14, p. 22) (emphasis added).  The Seminar syllabus defines academic dishonesty, in pertinent part, as:  "Plagiarism:  The use or reproduction of another's work without appropriate attribution.  The School expects all students

to produce original work in their papers, coursework, dissertation, and other academic projects and to follow appropriate rules governing attribution." (*Id.*) Even taking reasonable inferences in the light most favorable to Plaintiff, the inclusion of a mandatory referral, based on a 20 percent similarity index, in the syllabus for a different class does not lead to an inference that the same rule is in place across the school. Nor does it lead to the inference that the Seminar class used the same percentage of similarity where the Seminar syllabus states all incidents of plagiarism *must be referred* to the Department Chair. Plaintiff presented no other admissible evidence that any amount of plagiarism was acceptable or that there was an unofficial policy of allowing a certain amount of plagiarism.

Plaintiff also argues that the Court ignored her argument that the SAC did not consider her complaints of unprofessional protocol, unfair selective treatment, and retaliation. As discussed in the summary judgment ruling, Plaintiff raised the issues of unfair selective treatment by Davisson and retaliation from the litigation in her SAC hearing. (PSOF ¶¶ 23, 24) ("At [the SAC] hearing, Plaintiff complained of Davisson's unprofessional breach of protocol, unfair selective treatment, and retaliation from instant (*sic*) from (*sic*) litigation.") As also discussed in the summary judgment ruling, Plaintiff presented no facts or evidence that she was singled out or targeted in response to this lawsuit and no evidence that those arguments to the SAC were ignored.

In order to defeat summary judgment, Plaintiff had to present "material facts that establish a genuine dispute for trial." *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). Plaintiff failed to present evidence establishing a genuine dispute for trial on the issue of plagiarism.

**CONCLUSION**

Plaintiff's Motion to Reconsider [108] is denied.

Date: _____March 8, 2017_____     /s/ _____

                                         JOHN W. DARRAH
                                    United States District Court Judge